## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MELISSA A.,

       Plaintiff,

    v.

FRANK BISIGNANO,
 COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

No. 24 CV 6879

Magistrate Judge McShain

### MEMORANDUM OPINION AND ORDER

Plaintiff Melissa A. appeals from the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion to reverse and remand [9] is denied, defendant's motion for summary judgment [10] is granted, and the denial of benefits is affirmed.[1]

### Background

In October 2021, plaintiff applied for a period of disability and disability insurance benefits with an alleged onset date of June 5, 2020. [8-1] 16. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge (ALJ). [*Id.*] 16-27. The Appeals Council denied review in July 2024, *see* [*id.*] 1-7, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. [8-1] 18. At step two, the ALJ determined that plaintiff had the following severe impairments: narcolepsy with cataplexy, obstructive sleep apnea, and obesity. [*Id.*] 19. At step three, the ALJ concluded that plaintiff's impairments did not meet or

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [8], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [15].

equal the severity of a listed impairment. [*Id.*] 19-20. Before turning to step four, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform light work, except that plaintiff could never climb ladders, ropes, or scaffolds and must avoid exposure to unprotected heights, hazardous machinery, and commercial driving. [*Id.*] 20-26. At step four, the ALJ ruled that plaintiff could perform her past relevant work as a massage therapist and a substitute teacher. [*Id.*] 26-27. Because that finding meant that plaintiff was not disabled, the ALJ did not proceed to step five.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that the denial of benefits should be reversed and the case remanded because the ALJ (1) should have included limitations in the RFC assessment that accounted for her off-task time, need for frequent breaks, and expected absences from work, (2) erred in weighing the opinion of a treating sleep specialist, (3) patently erred in assessing her subjective symptom allegations, and (4) improperly dismissed the third-party reports submitted by plaintiff's mother and sister.

## I.    RFC Assessment

Plaintiff first argues that the ALJ failed to build a logical bridge from the evidence of her narcolepsy with cataplexic events to the conclusion that plaintiff does not require an allowance for off-task time, breaks, or absences from work. [9] 7. In support, plaintiff contends that her treating sleep specialist, Dr. Peter Analytis, opined that, due to the severe fatigue caused by her narcolepsy, plaintiff would be off-task for at least 25% of the workday, absent at least four days per month, and require at least two unscheduled breaks lasting between 15 minutes and three hours every day. [*Id.*] 8. Plaintiff also points to the opinion of her chiropractor (and employer), Dr. Eric Carson, who likewise opined that plaintiff would frequently be absent, required extensive breaks, and would have an impaired ability to pay attention for at least

one-third of the workday. [*Id*.]. Finally, plaintiff emphasizes her testimony that she would need "progressively more unscheduled breaks the more days in a row she would work[.]" [*Id*.]. The Court rejects these arguments for the following reasons.[3]

"The ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Jennifer M. v. Bisignano*, No. 23 CV 2219, 2025 WL 2463059, at *2 (N.D. Ill. Aug. 26, 2025) (internal citations and quotation marks omitted). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022).

## A.    Opinion Evidence

An ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or administrative finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id.* "An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors." *Id.*

As noted above, Dr. Analytis opined that plaintiff (1) must avoid driving, heights, machinery, and power tools; (2) would be off task for more than 25% of the workday; and (3) would be absent at least four times per month. *See* [8-1] 554-57. The ALJ concluded that this opinion was "unpersuasive" because "the observations of record, including Dr. Analytis' own observations do not support the limitations in his opinion." [8-1] 25. The ALJ explained that Analytis's treatment notes from plaintiff's January 2023 and January 2024 appointments contained only "normal observations." [*Id*.]. The ALJ also noted that, according to these same treatment notes, plaintiff's "symptoms of narcolepsy with cataplexy events are more or less controlled with her present medication," and plaintiff's most recent cataplexy event had occurred six months ago. [*Id*.].

---

[3] Because plaintiff's first argument depends on her claims that the ALJ erred in weighing the opinion evidence and in rejecting her subjective symptom allegations, the Court addresses plaintiff's first three arguments together.

The Court concludes that the ALJ's weighing of Dr. Analytis's opinion is supported by substantial evidence. First, the ALJ accurately observed that Analytis's treatment notes do not support his opinion that plaintiff's narcolepsy caused disabling restrictions. To the contrary, Dr. Analytis's notes reflect that plaintiff's condition was "more or less controlled with present medications" and that trying additional medications in the future would likely be beneficial. *See* [8-1] 535, 541. The June 2023 treatment note reflects Dr. Analytis's finding that plaintiff "seems stable," had not had a cataplexy event in six months, and was benefiting from CPAP therapy. [*Id.*] 536-37. As far as narcolepsy-related restrictions, Dr. Analytis's notes state only that plaintiff should avoid hazardous scenarios due to sleepiness. [*Id.*] 541. Second, the ALJ's decision reflects that Dr. Analytis's opinion was inconsistent with the "partially persuasive" opinions of the state agency reviewers, [*id.*] 24, both of whom opined that plaintiff could perform light work if she avoided all hazardous scenarios. *See* [*id.*] 93-99, 100-06. Indeed, the agency reviewer at the reconsideration stage, Dr. LaFata, evaluated Dr. Analytis's opinion statement and concluded–as the ALJ essentially did–that the opinion was "slightly extreme" and "without substantial support from the source who made it, which renders it less persuasive." [*Id.*] 103. All the foregoing provides a substantial evidentiary basis for the ALJ's decision that Dr. Analytis's opinion was not persuasive.

Plaintiff's arguments to the contrary lack merit. Plaintiff contends that the ALJ cherry-picked the record and "played doctor" by purporting to interpret the results of a sleep study that Dr. Analytis conducted. In support of the former point, plaintiff contends that the ALJ focused on the benign findings in the January 2023 treatment note but ignored the remainder of the note, which documents a sleep study that Analytis performed in August 2022 and additional evidence reflecting that plaintiff had been diagnosed with narcolepsy when she was a teenager. *See* [9] 9-10. Contrary to plaintiff's argument, however, the ALJ specifically referred to the August 2022 sleep study, as well as treatment notes documenting the results of the study, earlier in her decision. *See* [8-1] 21 (citing [*id.*] 535-36, 544-53). In any event, the ALJ was not required to discuss every piece of evidence in the record when analyzing the consistency and supportability of Dr. Analytis's opinion. *See Lisa L. v. O'Malley*, No. 20-CV-50395, 2024 WL 1013977, at *2 (N.D. Ill. Mar. 8, 2024) ("In considering the supportability and consistency of a medical opinion," the ALJ "need only minimally articulate[ ] her reasoning for the persuasiveness of the medical opinion."); *see also Warnell*, 97 F.4th at 1053. On the latter point, while "it is for doctors, and not ALJs, to interpret x-rays, MRIs, and other raw medical data," *Theresa M. v. Saul*, No. 19 C 3135, 2020 WL 7641286, at *5 (N.D. Ill. Dec. 23, 2020), the ALJ never suggested that the results of the sleep study were anything other than what Dr. Analytis said they were. Thus, plaintiff's "playing doctor" argument has no basis in the ALJ's decision.

Finally, the Court notes that the ALJ ruled that Dr. Carson's opinion was "unpersuasive" because it was "unsupported by and inconsistent with the record.]"

[8-1] 25. Despite that ruling, plaintiff's opening brief did not present any argument as to why the ALJ erred in so weighing Carson's opinion. *See* [9] 7-9. The Court therefore agrees with the Commissioner, *see* [11] 3 n.2, that, to the extent that plaintiff attempts to challenge the ALJ's handling of Dr. Carson's in her reply brief, *see* [12] 2, that argument is forfeited. *See Patricia N. v. O'Malley*, Case No. 20-cv-50388, 2024 WL 366466, at *4 (N.D. Ill. Jan. 3, 2024) (argument raised for first time in reply brief is forfeited).

## B.    Subjective Symptom Allegations

Plaintiff argues that the ALJ's subjective symptom determination was patently erroneous because the ALJ never "consider[ed] her strong work record." [9] 13. Plaintiff contends that she has "pushed herself beyond her capabilities to try to work despite suffering from extensive symptoms from narcolepsy" but ultimately had to stop working due to that condition. [*Id.*] 2-5.

"When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Alejandro D. v. O'Malley*, No. 21 CV 5250, 2024 WL 4465475, at *5 (N.D. Ill. Oct. 10, 2024) (internal quotation marks omitted). "The ALJ must explain her subjective symptom evaluation in such a way that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Id.* (internal quotation marks and brackets omitted). "The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is patently wrong." *Id.* (internal quotation marks omitted). "Flaws in the ALJ's reasoning are not enough to undermine the ALJ's decision that a claimant was exaggerating her symptoms. Not all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original; internal quotation marks and brackets omitted).

Contrary to plaintiff's argument, the ALJ did consider plaintiff's work record when evaluating her subjective symptom allegations. As the ALJ explained:

> Along with the claimant's daily activities, as mentioned earlier, the record reflects work activity after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported.

[8-1] 23 (internal citations omitted).

5

Thus, the ALJ considered plaintiff's work history, but drew the opposite inference than the inference that plaintiff wishes the ALJ had drawn. While another ALJ or this Court might reasonably have found that plaintiff's work history after the alleged onset date demonstrated that plaintiff sincerely wanted to work but could not do so because of her narcolepsy, the ALJ did not patently err by drawing a different inference. *Cf. Cynthia C. v. Bisignano*, No. 25 C 2146, 2025 WL 2522626, at *5 (N.D. Ill. Sept. 2, 2025) ("The ALJ opinion therefore is supported by substantial evidence, in that the ALJ simply weighed [the evidence] differently than Plaintiff prefers."). The Court also notes that the ALJ's subjective symptom determination is supported by multiple other factors–none of which plaintiff challenges, *see* [9] 13–including (1) the inconsistencies between plaintiff's allegations and the objective evidence, (2) the "more or less" successful management of plaintiff's symptoms with prescription medication, (3) the efficacy and conservative nature of her treatment, and (4) her activities of daily living. *See* [8-1] 22-23.

\*   \*   \*

Because substantial evidence supports the ALJ's weighing of Dr. Analytis's opinion and the ALJ's subjective symptom determination, the ALJ did not err by omitting from the RFC limitations related to plaintiff's alleged need for breaks, absenteeism, and off-task time. Thus, the Court rejects plaintiff's first, second, and third grounds for a remand.

## II.   **Third-Party Reports**

Plaintiff argues that the ALJ improperly dismissed the opinions of her mother and sister, each of whom submitted a letter describing how plaintiff's narcolepsy affected plaintiff's ability to function. [9] 13; *see also* [8-1] 378-82. The ALJ summarized the substance of plaintiff's mother's letter and "considered [her] statement" as part of the ALJ's review of "the totality of the record." [8-1] 26. However, the ALJ declined to provide an analysis of "any evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520," including "the Third-Party Statement completed by the claimant's mother[.]" [*Id.*] 26. The ALJ did not, however, mention the letter submitted by plaintiff's sister.

The ALJ's handling of the third-party reports does not require remand. Here the ALJ summarized plaintiff's mother's report and explained that she did not find it to be reliable or persuasive. [8-1] 26. This was sufficient to meet the ALJ's "most minimal of articulation requirements," *Warnell*, 97 F.4th at 1053, especially because the regulations do not require ALJs to evaluate opinions provided by laypersons according to the same criteria that apply to opinions from medical sources. *See* 20 C.F.R. § 404.1520c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section."); *see also Andrew L. v. Kijakazi*, No. 20 CV 1609, 2021 WL 5447035, at *4 (N.D. Ill. Nov. 22, 2021) (holding that § 1520c requires, at most, "minimal articulation

of how nonmedical evidence was considered"). And even assuming, *arguendo*, that the ALJ erred by failing to discuss the statement from plaintiff's sister, *but see Parrish v. Kijakazi*, Cause No. 1:20-CV-258 DRL, 2021 WL 5833455, at *4 (N.D. Ind. Dec. 9, 2021) (holding that § 404.1520c(d) does not require ALJ "to articulate his consideration of non-medical sources"), the Court holds that any such error was harmless.[4] An ALJ's error is harmless if the court is "convinced that the ALJ will reach the same result" on remand. *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021). Here, as discussed above, the ALJ reasonably concluded that plaintiff's subjective allegations were inconsistent with the medical record, the efficacy of her prescription medications and CPAP therapy, the conservative nature of the treatment record, her work history, and her activities of daily living. The ALJ also concluded that a very similar third-party statement from plaintiff's mother was not reliable and persuasive. And the ALJ relied on substantial evidence to reject Dr. Analytis's opinion regarding plaintiff's absenteeism, her need for breaks, and her off-task time. For those reasons, the Court is convinced that, if the case were remanded for the ALJ to explain how she weighed plaintiff's sister's report, the ALJ would not find that plaintiff was disabled. *Cf. Parrish*, 2021 WL 5833455, at *4 (ALJ's failure to discuss claimant's mother's function report was not error where report merely "reiterate[d] and corroborate[d] Ms. Parrish's own testimony and doesn't constitute a separate line of evidence that the ALJ should discuss").

## Conclusion

Plaintiff's motion to reverse and remand [9] is denied, defendant's motion for summary judgment [10] is granted, and the denial of benefits is affirmed

*Heather K. McShain*

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: February 12, 2026**

---

[4] The Court notes that a split of authority exists among district courts within the Seventh Circuit regarding whether and to what extent an ALJ must articulate how she considered opinions from nonmedical sources. Because plaintiff has not developed an argument based on 20 C.F.R. § 404.1520c(d) or the cases interpreting this regulation, and because the Commissioner has thus been denied an opportunity to respond to any such argument, the Court need not pursue the issue further.